UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

JOSE RODRIGUEZ-RODRIGUEZ       §
                               §
VS.                            §        CIVIL ACTION NO. 5:26-cv-901
                               §
DAVID COLE[1] *et al.*         §

## ORDER

Petitioner, a Mexican national in ICE custody, brings this 28 U.S.C. § 2241 Petition challenging his re-detention following revocation of his order of supervised release (Dkt. No. 1). Following an exhaustive review of the law and facts, the Court **GRANTS IN PART** and **DENIES IN PART** the Petition (Dkt. No. 1). Respondents' Motion to Dismiss (Dkt. No. 8) is **DENIED**.

## I.    BACKGROUND

Petitioner is a 59-year-old Mexican national (Dkt. Nos. 1 at 10, ¶ 27; 1-1 at 2, ¶ 2). While in Mexico, Petitioner was subjected to kidnapping and assassination plots (Dkt. Nos. 1 at 10, ¶ 28; 1-1 at 2, ¶ 7). In 2012, he escaped Mexico and sought refuge in the United States (Dkt. No. 1 at 10, ¶ 28; 1-1 at 2, ¶ 7). He arrived on June 10, 2012, and was immediately detained upon his entry (Dkt. No. 10, ¶ 28; 1-1 at 2, ¶ 5). He was released shortly thereafter on an Order of Release on Recognizance ("OROR") (Dkt. No. 1 at 10, ¶ 28; 1-1 at 2, ¶ 6; 4-1).

Petitioner promptly applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") (Dkt. Nos. 1 at 10, ¶ 28; 1-1 at 2, ¶ 7). While awaiting adjudication on his immigration applications, he adhered to all conditions

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), David Venturella is substituted for Respondent Todd Lyons in this case. The Clerk of Court is **DIRECTED** to substitute this party on the docket sheet.

of release in his OROR (Dkt. Nos. 1 at 10, ¶ 28; 1-1 at 2, ¶ 6). On May 13, 2014, an Immigration Judge ("IJ") granted Petitioner withholding of removal under Article III of CAT (Dkt. Nos. 1 at 10, ¶ 29; 1-1 at 2, ¶ 8; 1-2). It seems ICE never issued a separate Order of Supervision ("OOS"); rather, it stamped Petitioner's OROR at his required check-ins from 2013 through at least 2022 (Dkt. Nos. 1 at 11, ¶ 29 & n.1; 1-1 at 2, ¶ 9; 4-1). Following his CAT grant, Petitioner resided in Texas for fourteen years, raised his family, consistently complied with all release conditions, maintained a clean criminal record, and obtained work authorization (Dkt. Nos. 1 at 11, ¶ 30; 1-1 at 2, ¶¶ 9–12).

On February 6, 2026, ICE detained Petitioner at an immigration checkpoint in Falfurrias, Texas (Dkt. Nos. 1 at 11, ¶ 31; 1-1 at 2, ¶ 13). ICE officials demanded Petitioner strip his shoes and belt and confiscated his work authorization and cell phone (Dkt. Nos. 1 at 11, ¶ 32; 1-1 at 2–3, ¶ 13). At no point did ICE advise Petitioner why he was being detained, or why his OOS was being revoked (Dkt. No. 1 at 12, ¶ 34; 1-1 at 2–3, ¶¶ 13–14, 17).

On March 24, 2026, ICE served Petitioner—for the first time—a "Notice of Revocation of Release" (the "March Notice"), which is dated March 23, 2026 (Dkt. Nos. 1 at 29, ¶ 80; 1-1 at 3, ¶¶ 15–16; 4-2 at 2–3). The document indicates Petitioner was released under an OOS[2] on June 23, 2014, and that his OOS was revoked pursuant to 8 C.F.R. § 241.4(*l*) (Dkt. No. 4-2 at 2). As evidenced below, ICE's reasons for revocation are noticeably blank:

---

[2] For this reason, the Court will refer to Petitioner's release as pursuant to an OOS.

2

☒ Your release has been revoked pursuant to 8 C.F.R. § 241.4(l), for the following reason(s):

   ☐ The purposes of release have been served.

   ☐ You violated a condition of your release. Specifically, you:

   (Information about how condition of release violated)

   ☐ It is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal.

      ☐ ICE has obtained a travel document and scheduled your removal to take place no later than:

      _____
      Date (MM/DD/YYYY)

      ☐ ICE is seeking a travel document to effect your expeditious removal to _____
                                                  Country of Removal

      ☒ On ___05/13/2014___ , you were ordered removed to _____MEXICO_____ , but you
           Date (MM/DD/YYYY)                             Country

      were granted withholding of removal to _____MEXICO_____ . Your case is under review
                                         Country

      for removal to an alternate country.

   ☐ Your conduct, or other circumstance, indicates that release is no longer appropriate. Specifically, you:

   (Information about why release no longer appropriate)

(Dkt. No. 4-2 at 2). The document indicates that Petitioner would receive an informal interview on March 10, 2026, which was fourteen days *earlier* (Dkt. No. 4-2 at 3). It was authorized by Matthew R. Ochoa, the Acting Field Office Director, and digitally signed on March 23, 2026 (Dkt. No. 4-2 at 3). According to Petitioner, other detainees were present when he received this document, and the deportation officer never directly referenced his OOS, mentioned it had been revoked, or gave him an opportunity to respond (Dkt. No. 1-1 at 3, ¶ 15). Importantly, Respondents do not dispute this characterization (*see generally* Dkt. No. 8).

Petitioner filed the instant habeas proceeding, pursuing his immediate release (*see* Dkt. No. 1). Respondents timely moved to dismiss, principally arguing that Petitioner has not been detained for the presumptively reasonable period and their third-country removal policy passes constitutional muster (Dkt. No. 8). Petitioner timely filed a reply, and the matter is now ripe for the Court's consideration (*see* Dkt. No. 9).

## II.    LEGAL STANDARDS

### A.  28 U.S.C. § 2241

Under 28 U.S.C. § 2241(c)(3), a detainee may seek habeas relief if they are "in

3

custody in violation of the Constitution or laws or treaties of the United States." "The petitioner 'bears the burden of proving that [he] is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [his] burden of proof by a preponderance of the evidence.'" *Puertas-Mendoza v. Bondi*, No. SA-25-CV-00890-XR, 2025 WL 3142089, at *1 (W.D. Tex. Oct. 22, 2025) (Rodriguez, J.) (quoting *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025)).

A court entertaining a habeas petition shall immediately "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243. In a similar vein, a court need not hold a hearing if the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989); *see also Gomez-Simeon v. Bondi*, No. SA-25-CV-01460-JKP, 2025 WL 3470872, at *1, *6 (W.D. Tex. Nov. 24, 2025) (Pulliam, J.) (granting habeas petition without a hearing); *Puertas-Mendoza*, 2025 WL 3142089, at *1, *5 (same).

## B. Federal Rule of Civil Procedure 12(b)(6)

Courts have found "that use of Rule 12(b)(6) in [the] habeas context is inconsistent with the habeas rules." *Ndudzi v. Castro*, No. SA-20-CV-0492-JKP, 2020 WL 3317107, at *9 (W.D. Tex. June 18, 2020); *Olya v. Garite*, No. EP-25-CV-00083-DCG, 2025 WL 3254931, at *3 n.32 (W.D. Tex. Oct. 14, 2025). Accordingly, "[a] motion to dismiss for failure to state a claim is an inappropriate practice in habeas." *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (citing *Browder v. Director, Dep't of Corrections of Ill.*, 434 U.S. 257, 269 n.14 (1978)).

## III.    DISCUSSION

Petitioner opposes his prolonged detention in contravention with the Immigration

and Nationality Act and *Zadvydas v. Davis*, 533 U.S. 678 (2001) and as a due process violation for ICE's failure to follow its own revocation procedures (*see generally* Dkt. No. 1). Finding the latter argument to be outcome determinative, the Court will not address the former.

### A. The Court Maintains Subject Matter Jurisdiction

Respondents argue the "Court lacks jurisdiction to review Petitioner's Due Process claims because they are inextricably intertwined with ICE's unreviewable authority to execute a final order of removal" (Dkt. No. 8 at 6). In so arguing, Respondents offer a materially indistinguishable argument from that previously advanced and already discarded. *See Ekembe v. Perez*, 5:25-cv-225, slip. op. at 4–6 (S.D. Tex. Dec. 24, 2025). For the same reasons as in *Ekembe*, the Court finds it has subject matter jurisdiction.

However, 8 U.S.C. § 1252(a)(2)(B)(ii) could be relevant here. Mindful of its duty to raise subject matter jurisdiction *sua sponte*, the Court briefly considers that provision's effect. *Colvin v. LeBlanc*, 2 F.4th 494, 498 (5th Cir. 2021) (citing *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004)). Under § 1252(a)(2)(B)(ii) federal courts lack jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *See also* 8 C.F.R. § 241.4. Courts generally agree § 1252(a)(2)(B)(ii) strips federal courts of jurisdiction to review the discretionary decision to revoke an OOS. *Villanueva*, 801 F. Supp. 3d at 698; *Deras Galdamez v. Noem*, No. 5:25-cv-252, slip. op. at 5 (S.D. Tex. Jan. 30, 2026) (Kazen, J.); *Pham v. Bondi*, No. CV H-25-5765, 2026 WL 969962, at *5 (S.D. Tex. Jan. 9, 2026).

But at the crux of Petitioner's challenge lies the process—or absence of it—he

received in accordance with the revocation. "The Court unquestionably has jurisdiction to review [Petitioner's] claims that . . . [R]espondents have violated his statutory and constitutional rights to due process by re-detaining him." *Pham*, 2026 WL 969962, at \*5 (collecting cases). As many courts have found, § 1252(a)(2)(B)(ii)'s text does not preclude Petitioner from challenging the manner Respondents revoked his OOS or "whether the Government followed its own regulations in doing so." *Villanueva*, 801 F. Supp. 3d at 698 (citation modified); *Deras Galdamez*, No. 5:25-cv-252, slip. op. at 5–6; *Mantena v. Johnson*, 809 F.3d 721, 728–29 (2d Cir. 2015). The Court therefore finds it has jurisdiction and turns to the Petition's merits.

### B. 8 C.F.R. § 241.4 Governs Petitioner's Revocation

Petitioner asserts that his OROR was converted to an OOS because he never received a separately titled OOS document (Dkt. No. 1 at 11 & n.1). This tracks the evidence in the record, as the OROR is covered with ICE official signatures and stamps with Petitioner's various "report dates" (Dkt. No. 4-1 at 3). Respondents concede this point by ignoring it—and they eventually informed Petitioner that his release was revoked under § 241.4(*l*) (Dkt. No. 4-2 at 2). Thus, the Court scrutinizes the lawfulness of ICE's revocation procedures under § 241.4.

### C. Respondents Violated 8 C.F.R. § 241.4's Revocation Procedures

Under § 241.4(*l*)(1), ICE may revoke an alien's release for violations of the conditions of release. The neighboring provision, § 241.4(*l*)(2), further promulgates that only designated, high-level officials are discretionarily authorized to revoke an OOS if:

(i)     The purposes of release have been served;
(ii)    The alien violates any condition of release;
(iii)   It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
(iv)    The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*See also Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at \*9 (S.D. Tex. Jan. 28, 2026) (Saldaña, J.). Because Petitioner maintains—and Respondents do not dispute—that he complied with all requirements of his OOS for years, § 241.4(*l*)(2) must serve as Respondents' revocation authority (Dkt. Nos. 1 at 11, ¶ 30; 1-1 at 2, ¶ 10).

### 1. Signing Official

Either the Executive Associate Commissioner or ICE's District Director must authorize the revocation of an OOS pursuant to § 241.4(*l*)(2). *See also Nguyen*, 2026 WL 237282, at \*9; *Villanueva*, 801 F. Supp. 3d at 694 ("[O]nly two officials have the authority to revoke an Order of Supervision."). The Court will assume, without expressly deciding, Mr. Ochoa is an official with authority to revoke an OOS. 8 C.F.R. § 1.2 (post March 1, 2003, a district director includes both the "director, field operations" and the "field office director"). Nevertheless, the Court finds no basis to conclude that Mr. Ochoa revoked Petitioner's OOS in this case.

Several sister district court opinions inform the Court's decision. For example, in *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087 (D. Md. Aug. 25, 2025), an El Salvadorian national, who had lived in the country on an OOS for over two years, was detained when he presented for a routine check-in. 2025 WL 2444087, at \*1–2. When he produced his immigration paperwork, local ICE officials nonetheless detained him and failed to serve him with any revocation papers. *Id.* at \*1–2, \*6. Finding this violative of § 241.4(*l*)(2), the court determined the decision to detain the petitioner could *not* have reasonably derived from an authorized official. *Id.* at \*6. Similarly, in *Zhu v. Genalo*, 798 F. Supp. 3d 400 (S.D.N.Y. 2025), ICE arrested a Chinese national outside his home during a field operation. 798 F. Supp. 3d at 404. The court stressed there was *no* evidence a designated official "made the decision to revoke [the petitioner's] release

*prior* to his detention." *Id.* at 413 (emphasis added).

Here, too, federal agents detained Petitioner following a chance encounter (Dkt. Nos. 1 at 9, ¶ 21; 1-1 at 2, ¶ 13). According to Petitioner, no ICE official explained the reason for revoking his OOS on February 6, 2026, or for his subsequent re-detention (Dkt. No. 1 at 12, ¶ 34; 1-1 at 2–3, ¶¶ 13–14, 17). Respondents offer nothing in rebuttal. Thus, there is simply *no* evidence that Mr. Ochoa made the threshold determination to revoke Petitioner's release *prior* to his detention, and the Court finds that Respondents failed to follow § 241.4(*l*)(2). *Zhu*, 798 F. Supp. 3d at 413–14.

### 2. *Notice and Post-Revocation Interview*

Under the regulatory framework:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

8 C.F.R. § 241.4(*l*)(1); *see also Valbueno Soto v. Vergara*, 5:26-cv-497, slip. op. at 7–8 (S.D. June 25, 2026) ("The Court agrees with the prevailing authorities and holds re-detention under § 241.4(*l*)(2) requires notice and an informal post-revocation interview."); *see also Zhu*, 798 F. Supp. 3d at 410–13 ("[R]edetention under section 241.4 requires notice and an informal interview."); *Deras Galdamez*, No. 5:25-cv-252, slip. op. at 7–8; *Nguyen v. Dep't of Homeland Sec.*, No. CIV-26-87-R, 2026 WL 1506428, at *4 (W.D. Okla. May 29, 2026). Respondents erred at every turn.

### a. Insufficient Notice of Reasons for Revocation

To conform with § 241.4(*l*)(2), a notification of revocation of release must provide the reasons for revocation *upon revocation*. The Court will analyze this requirement bifold, beginning with the upon revocation requirement.

In *Funes v. Francis*, 810 F. Supp. 3d 472, 494 (S.D.N.Y. 2025), a Honduran citizen

holding an OOS attended an immigration check-in. 810 F. Supp. 3d at 478–79. Upon her arrival, ICE escorted her to conference room and notified her she would be detained. *Id.* at 486. She was handcuffed and placed in a holding cell on the tenth floor. *Id.* at 488. Later that evening, ICE offered the petitioner written notice of revocation of her OOS, which was digitally signed *nearly eight hours* after the petitioner was confined to the holding cell. *Id.* The court found that the notice was not provided "upon revocation" because she did not receive it **until many hours** after she was detained. *Id.* at 494.

This instant matter presents a stronger case. Even crediting the March Notice, it was delivered to Petitioner *forty-six days after* he was apprehended (Dkt. No. 4-2). The Court would be hard-pressed to label that as "upon revocation" by any standard. *See id.* Critically, though, Respondents were *actually* obligated to furnish Petitioner notice at the time of his arrest. *See Martinez v. Jamison*, No. 26-CV-00718, 2026 WL 700335, at *4 (E.D. Pa. Mar. 12, 2026) ("Therefore, on the face of the document, Respondents did not provide Petitioner with the Notice of Revocation of Release—i.e., the reasons that they were revoking his OSUP and detaining him—at the time of his arrest and detention."). He declares this did not occur at that time, and, in fact, did not occur at all (Dkt. No. 1-1 at 3, ¶¶ 14, 17).

Turning to the reasons for revocation, ICE did not bother to designate a *single* justification on the March Notice—it is utterly vacant (Dkt. No. 4-2 at 2). Considering courts have found that "boilerplate statements are insufficient notice," *zero statements* cannot rise to the occasion either. *Gutnik v. Bondi*, No. 5:26-CV-00908-WLH-ACCV, 2026 WL 700546, at *2–3 (C.D. Cal. Mar. 5, 2026) (collecting cases). Still, ICE was required to notify Petitioner of the reasons for his revocation *far* earlier than the March Notice. Respondents do not dispute Petitioner's allegations that they failed to expound reasoning

9

before Petitioner's revocation and re-detention. *See Olivera-Martinez v. Valdez*, No. 26-CV-01120-NYW, 2026 WL 1361538, at \*3 (D. Colo. May 15, 2026). This alone would warrant Petitioner relief.

b.   Informal Interview and Opportunity to Respond

"When the government fails to include the reasons for revocation of release in the notice of revocation, it also deprives the noncitizen of the opportunity to respond to those reasons." *Pham v. Warden*, No. 1:25-CV-01873-DC-AC (HC), 2026 WL 849861, at \*13 (E.D. Cal. Mar. 27, 2026) (referencing § 241.13(i)(2)). Setting that aside, an interview that occurs "weeks or months after revocation of release is not a 'prompt' 'initial informal interview.'" *Id.* (collecting cases).

To be clear, Petitioner claims he *never* received an informal interview (Dkt. Nos. 1 at 28–29, ¶ 79; 1-1 at 3, ¶¶ 15–17). The March Notice inexplicably states that Petitioner's interview is scheduled for a date fourteen days *prior* (Dkt. No. 4-2 at 3 ("On 3/10/2026, you will be afforded an informal interview . . . .")). Without a time machine, Petitioner obviously could not gather evidence and meaningfully contest his revocation at this bygone "interview." *See Doval v. U.S. Immigr. & Customs Enf't*, No. 3:26-CV-247-JEP-SJH, 2026 WL 1153072, at \*3 (M.D. Fla. Apr. 29, 2026) (finding an interview on the same day as the notice was provided "effectively [eliminated the] opportunity to gather 'any evidence or information'" (quoting 8 C.F.R. § 241.13(i)(3)). Even assuming Petitioner's interview took place in the presence of his dormmates on March 24, 2026, such conduct remains flagrantly dilatory. *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at \*11 (D. Or. Aug. 21, 2025) (concluding that an informal interview provided twenty-seven days after re-detention was not in compliance with the

regulations). The Court holds that Respondents did not adhere to their regulations.

**D. The Failure to Comply is a Due Process Violation**

"While ICE has wide discretion to revoke an alien's supervised release, it is required to follow its own regulations." *Doval*, 2026 WL 1153072, at *3 (citing *Mohammed H. v. Trump*, 781 F. Supp. 3d 886, 895 (D. Minn. 2025)). "An agency's violation of its regulations may support a procedural due process claim." *Ayala Chapa v. Bondi*, 132 F.4th 796, 799 (5th Cir. 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Generally, "the party asserting error [must] demonstrate prejudice from the error." *City of Arlington v. F.C.C.*, 668 F.3d 229, 243 (5th Cir. 2012), *aff'd*, 569 U.S. 290 (2013); *see also McKoy v. Fox*, 587 F. App'x 802, 805 (5th Cir. 2014) (in the § 2241 context).

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Undocumented aliens enjoy due process rights "whether their presence [in the nation] is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see also Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment . . . protects every one of these persons from deprivation of life, liberty, or property without due process of law.").

Petitioner is entitled to protection and was substantially prejudiced by Respondents' § 241.4 noncompliance. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Yet Respondents erroneously deprived Petitioner of notice and the

opportunity to be heard, leading to his subsequent detention for over five months. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."). To consider the extent of the procedural due process violation, the Court examines the well-known *Mathews v. Eldridge* factors.

### 1. The Private Interests

For the first *Mathews* prong, the Court considers "the private interest that will be affected by the official action." 424 U.S. at 335. "The interest in being free from imprisonment is the most significant liberty interest there is." *Bonilla Chicas v. Warden*, 821 F. Supp. 3d 782, 798 (S.D. Tex. 2026) (citation modified) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Courts have recognized that "individuals who have been conditionally released from detention have a protected interest in their 'continued liberty.'" *Villanueva*, 801 F. Supp. 3d at 704.

Before Respondents re-detained Petitioner, he lived in the United States, without incident, for fourteen years (Dkt. Nos. 1 at 11, ¶ 30; 1-1 at 2, ¶¶ 9–12). During his years-long release, he adhered to all conditions of his OOS (Dkt. No. 1-1 at 2, ¶ 10). He obtained a valid work authorization, working as a painter and selling items at a local flea market (Dkt. Nos. 1 at 11, ¶ 30; 1-1 at 2, ¶ 11). *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (the right "to stay and live and work in this land of freedom" is paramount). "There is no principled reason to find that [Petitioner] does not have an overwhelming liberty interest in his continued release that may not be removed without due process." *Villanueva*, 801 F. Supp. 3d at 704; *see also Deras Galdamez*, No. 5:25-cv-252, slip. op. at 9. This factor overwhelmingly weighs in Petitioner's favor.

*2. Cost-Benefit Analysis*

Next, the Court explores the "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, the Court looks no further than the regulations themselves, as they were framed to provide Petitioner with notice and an opportunity to be heard. *Villanueva*, 801 F. Supp. 3d at 704; *Deras Galdamez*, No. 5:25-cv-252, slip. op. at 9. Respondents offer no basis for their failure to comply with the applicable regulations. The risk of erroneous deprivation is unquestionably high, and this factor weighs in Petitioner's favor.

*3. The Government's Interest*

Finally, the Court considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "To be sure, the Government has a weighty interest in removing deportable noncitizens, ensuring compliance with OOS, and protecting the public." *Villanueva*, 801 F. Supp. 3d at 705 (citation modified). However, nothing in the record suggests that Petitioner violated his OOS or was a danger to the public. To the contrary, Petitioner has a clean criminal record (Dkt. No. 1-1 at 2, ¶ 12). Nor have Respondents alleged Petitioner's removal is imminent. Thus, the Court finds no viable justification for Respondents to blatantly disregard their own regulations. This factor, too, weighs in Petitioner's favor.

**E. The Due Process Violation Warrants Petitioner's Release**

"Multiple courts have held that [Respondents'] failure to follow [their] own immigration regulations may warrant the release of a detained noncitizen." *Id.* at 700 (collecting cases). Other courts have gone so far as to deem the revocation itself void.

13

*Qui v. Carter*, No. 25-3131-JWL, 2025 WL 2770502, at *4 (D. Kan. Sep. 26, 2025) ("[T]he [c]ourt concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release."). "Even when a petitioner could be immediately re-detained, courts have found that release still vindicates this type of procedural due process violation." *Deras Galdamez*, No. 5:25-cv-252, slip. op. at 10–11 (citing *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 156 (W.D.N.Y. 2025)).

The suitable remedy in this case is release. After residing in the United States for **fourteen years**, Petitioner was unlawfully detained for over five months. He was clearly deprived of notice and an opportunity to be heard, and Respondents have not even ventured to argue otherwise. "[T]he Court finds that the specific harm Petitioner suffered—revocation of release without due process—is remedied by granting his request for release and returning him to his status prior to the unlawful revocation." *Id.* at 11.

### F.  Third-Country Removal Procedures

The Petition alleges that ICE's current procedures for third-country removal violate due process and the INA. However, Petitioner acknowledges "no deportation officer has ever told [him] that a specific third country has been identified for [his] removal" (Dkt. No. 1-1 at 3, ¶¶ 18, 20). Moreover, Petitioner admits challenges to the third-country removal policy are premature and irrelevant to his request for immediate release (Dkt. No. 9 at 9). The Court defers ruling on this claim. *Rad v. Noem*, No. 5:26-CV-67, 2026 WL 2059102, at *5 (S.D. Tex. July 16, 2026) (Garcia Marmolejo, J.).

### G.  Remaining Claims

The Court rests its decision on the unlawful revocation of Petitioner's OOS. *Santamaria Orellana*, 2025 WL 2444087, at *8. It will not address Petitioner's other

arguments, as "any relief he could obtain . . . would be cumulative." *Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004).

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's habeas Petition (Dkt. No. 1) is **GRANTED IN PART**. All relief not expressly provided for in this Order is **DENIED**. Respondents' Motion to Dismiss (Dkt. No. 8) is **DENIED**. Petitioner's Motion for Entry of Order to Award the Writ of Habeas Corpus or Issue and Order Directing Defendants to Show Cause is **DENIED AS MOOT** (Dkt. No. 3).

Respondents are **ORDERED** to **RELEASE** Petitioner from custody to a public place **no later than 5:00 p.m. on July 24, 2026**. Respondents are **ORDERED** to **NOTIFY** Petitioner's counsel of the exact location and exact time of his release as soon as practicable and **no less than two hours before his release**. The parties are **ORDERED** to file a Joint Status Report **no later than 5:00 p.m. on July 28, 2026**, confirming that Petitioner has been released.

It is further **ORDERED** that Petitioner shall be released under the conditions of his OOS that were in effect prior to its improper revocation, and any revocation of Petitioner's OOS must be made pursuant to the relevant regulations and procedures governing revocation at 8 C.F.R. § 241.4(*l*)(1).

The Court's prior **ORDER**, that Respondents **NOTIFY** Petitioner's counsel and the Court of any planned removal of him from the United States, at least five (5) days before any such removal, **REMAINS IN PLACE**.

15

It is so **ORDERED**.

**SIGNED** July 23, 2026.

_____

Marina Garcia Marmolejo
United States District Judge